IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRENNAN McGOUGH, | ) | |
| Petitioner, | ) | Civil Action No. 13-43 Erie |
| | ) | |
| v. | ) | District Judge Cathy Bissoon |
| | ) | Magistrate Judge Susan Paradise Baxter |
| BOBBY L. MEEKS, | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.   RECOMMENDATION**

It is respectfully recommended that the petition for a writ of habeas corpus filed by Petitioner, Brennan McGough, be denied.

**II.   REPORT**

Petitioner is a federal inmate who is incarcerated at the Federal Correctional Institution, McKean. In his petition for a writ of habeas corpus [ECF No. 5], which he filed pursuant to 28 U.S.C. § 2241, he contends that the Bureau of Prisons (the "Bureau" or the "BOP"), which is the agency responsible for implementing and applying federal law concerning the computation of federal sentences, see, e.g., United States v. Wilson, 503 U.S. 329 (1992), erred in computing his federal sentence. Respondent filed an answer to the petition in which he maintains that Petitioner's federal sentence has been computed properly pursuant to the relevant statutes and BOP policies and that, therefore, Petitioner is not entitled to habeas relief. [ECF No. 9]. After Petitioner filed a reply [ECF No. 10], I issued a Report and Recommendation ("R&R") in which I recommended that the petition be denied. [ECF No. 13]. In his Objections to that R&R, Petitioner presented new documentation that he contends supports his claim for habeas relief. [ECF No. 18]. I then issued an Order in which I vacated

1

the R&R and directed Respondent to file a supplemental answer in order to address Petitioner's request for relief in light of the new documentation. [ECF No. 19]. Respondent has filed the supplemental answer [ECF No. 21], to which Petitioner has filed a reply [ECF No. 21].

For the reasons set forth below, I make the same recommendation that I made in my previous R&R: the Court should deny the petition.

A.     **Relevant Background**

The Johnstown Police arrested Petitioner on April 15, 2009. He was charged with criminal conspiracy in a case docketed in the Court of Common Pleas of Cambria County at CP-11-CR-1139-2009 ("**Case No. 1139**"). He did not post bail. (Declaration of Alan Ray, Management Analyst with the BOP, ¶ 3, ECF No. 9-1 at 1-4).

At that same time, Petitioner also faced criminal charges in two other state cases pending before the Court of Common Pleas of Cambria County. The first case was at docket number CP-11-CR-1198-2008 ("**Case No. 1198**"). On September 1, 2009, the state court sentenced him to a term of imprisonment of six months to one year, with credit for time served. The second case was at docket number CP-11-CR-2741-2008 ("**Case No. 2741**"). On October 14, 2009, the state court sentenced him in that case to a term of imprisonment of 18-48 months. (Ray Decl. ¶¶ 4, 5, ECF No. 9-1 at 2).

A few weeks earlier, on September 15, 2009, a federal grand jury had issued an indictment charging Petitioner at Count One with conspiracy to distribute and possess with the intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 846, and at Count Two with distribution of five grams or more of cocaine base, in violation of 28 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). An arrest warrant was issued in that case. (See ECF Nos. 1-8 in United States v. McGough, 3:09-cr-33 (W.D. Pa.)).

Because local/state authorities had arrested Petitioner first, he was in the "primary custody" (sometimes referred to as "primary jurisdiction") of the Commonwealth of Pennsylvania. The "primary custody" doctrine developed to provide different sovereigns (in this case the state and the federal governments) with an orderly method by which to prosecute and incarcerate an individual who has violated each sovereign's laws. Ponzi v. Fessenden, 258 U.S. 254 (1922). See, e.g., Bowman v. Wilson, 672 F.2d 1145, 1153-54 (3d Cir. 1982); George v. Longley, 463 F.App'x 136, 138 n.4 (3d Cir. 2012) (per curiam); Elwell v. Fisher, 716 F.3d 477 (8th Cir. 2013). In relevant part, the doctrine provides that the sovereign that first arrests an individual has primary custody over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him. The sovereign with primary custody is entitled to have the individual serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction, regardless of the chronological order of sentence imposition. See, e.g., Bowman, 672 F.2d at 1153-54. Primary custody remains vested in the sovereign that first arrests the individual until its sentence expires and it releases the inmate, or until it relinquishes its priority through some other act, such as granting bail, dismissing the charges, **or releasing the individual on parole**. George, 463 F.App'x at 138 n.4.

When it came time for Petitioner to be prosecuted for his federal charges, he was at the Cambria County Prison. The Assistant U.S. Attorney assigned to Petitioner's federal case filed an application for a writ of habeas corpus *ad prosequendum* so that Petitioner could appear in federal court to answer his charges there. (See ECF No. 14 in United States v. McGough, 3:09-cr-33 (W.D. Pa.)). The federal magistrate judge issued the writ of habeas corpus *ad prosequendum* and the U.S. Marshals Service ("USMS") took temporary physical custody of Petitioner pursuant to it. (See ECF Nos. 17, 20 in United States v. McGough, 3:09-cr-33 (W.D. Pa.)). (See also Ray Decl. ¶ 6, ECF No. 9-1 at 2). A prisoner who is received by a sovereign pursuant to a writ of habeas corpus *ad prosequendum* remains in the primary

3

custody of the sending sovereign unless and until it relinquishes jurisdiction over the person. See, e.g., Ruggiano v. Reish, 307 F.3d 121, 125 n.1 (3d Cir. 2002), superseded on other grounds by U.S.S.G. § 5G1.3(c) app. note 3(E) (2003). See also Elwell, 716 F.3d at 482 ("When the United States obtained physical custody of Elwell based upon the writ of habeas corpus *ad prosequendum*, the transfer of physical control over Elwell's custody from Iowa to the United States did not terminate Iowa's primary jurisdiction."). The receiving sovereign – in this case, the federal government – is considered simply to be "borrowing" the prisoner from the sending sovereign for the purposes of indicting, arraigning, trying, and/or sentencing him. Id.

On February 11, 2010, Petitioner (who was still in the physical custody of federal authorities pursuant to the writ of habeas corpus *ad prosequendum*), was paroled on the sentence he was serving in the state case at **Case No. 1198**. He remained in the primary custody of the Commonwealth because he still was serving the term of imprisonment imposed in the state case at **Case No. 2741**, and he still faced pending charges in the state case at **Case No. 1139**. (Ray Decl. ¶ 7, ECF No. 9-1 at 3).

Petitioner eventually entered a plea of guilty to Count One of his federal indictment, and on April 7, 2011, the federal district court sentenced him to a term of imprisonment of 72 months. When the federal court imposed Petitioner's sentence, it was silent as to whether it intended the federal sentence to run concurrently with any other sentence to which Petitioner was subject. (See ECF Nos. 116, 159 in United States v. McGough, 3:09-cr-33 (W.D. Pa.)). As explained below, because the federal district court did not order that Petitioner's federal sentence run concurrently with any state sentence, the BOP has calculated Petitioner's federal sentence to run consecutive to his state sentence. Petitioner does not challenge that decision.

On April 7, 2011, after the federal court sentenced Petitioner, the USMS returned him to the Cambria County Prison in satisfaction of the federal writ of habeas corpus *ad prosequendum*. The

4

federal government previously had lodged a detainer with the Pennsylvania Department of Corrections, and that detainer remained in effect. (Pet's Ex. B, ECF No. 5-1 at 4).

A few days after Petitioner returned to the physical custody of the Commonwealth, it dismissed the charges he faced in the state case at **Case No. 1139**. He remained in the primary custody of the Commonwealth because he still was serving the term of imprisonment imposed in the state case at **Case No. 2741**. (Ray Decl. ¶ 10, ECF No. 9-1 at 3). His minimum release date for that sentence was April 3, 2011, and his maximum release date was October 3, 2013. (Declaration of Paul Walters, Parole Manager I for the Board, ¶ 4, ECF No. 21-4 at 2).

On March 7, 2012, the Board released Petitioner on parole to the federal detainer. (Walters Decl. ¶ 9, ECF No. 21-4 at 3. See also Resp's Attach. B2, Order to Release On Parole/ReParole, ECF No. 21-6 at 2; Declaration of Timothy Holmes, Assistant Counsel with the Office of the Chief Counsel, Pennsylvania DOC, ¶ 4, ECF No. 21-1 at 3; Resp's Attach. A2, DOC Inmates Query-Moves, ECF No. 21-3 at 2). The BOP commenced his federal sentence on that date. The BOP also determined that Petitioner was entitled to 139 days of federal sentencing credit for certain time that he served in official detention prior to the commencement of his federal sentence. That credit is for the time he served from April 15, 2009 (the date the charges pending against him at **Case No. 1139** were dismissed) through August 31, 2009, because that time was not credited against any state sentence. (Resp's Ex. 2a, Inmate Data, ECF No. 9-9 at 4. See also Pet's Ex. C, ECF No. 5-1 at 5-7).[1]

When Petitioner learned how the BOP was calculating his federal sentence, he challenged it through the BOP's administrative review process. On January 22, 2013, Harrell Watts, Administrator,

---

[1] The BOP has projected Petitioner's release date from his federal term of imprisonment to be January 9, 2017 (assuming that he receives all good conduct time available to him). (Resp's Ex. 2a, Inmate Data, ECF No. 9-9 at 4).

National Inmate Appeals, issued a Response denying Petitioner's administrative appeal. (Pet's Ex. C, ECF No. 5-1 at 7).

After Petitioner's administrative remedy appeal was denied, he filed with this Court his petition for a writ of habeas corpus. As explained below, Petitioner claims that he should have been paroled on May 25, 2011, and therefore, he should receive credit against his federal sentence for all time served after that date.

### B.     Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). 28 U.S.C. § 2241 "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence," McGee v. Martinez, 627 F.3d 933, 935 (3d Cir. 2010), such as, for example, the way in which the BOP is computing his sentence. See, e.g., Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1990). Such petitions are filed in the federal court of the judicial district where the federal prisoner is incarcerated. Thus, this Court has jurisdiction under § 2241 to consider Petitioner's claim that the BOP has erred in computing his sentence.

### C.     Discussion

A federal habeas court may only extend a writ of habeas corpus to a federal inmate if he demonstrates that "[h]e is in custody in violation of the Constitution or laws of the United States[.]" 28 U.S.C. § 2241(c)(3). Two statutes are relevant to this case. The first is 18 U.S.C. § 3584(a), which governs a federal sentencing court's authority to order that a federal sentence be served concurrently with a state sentence. The second is 18 U.S.C. § 3585. Paragraph (a) of § 3585 governs the date upon

which a federal sentence commences, and paragraph (b) governs the amount of sentencing credit that an inmate may receive for time served in official detention prior to the commencement of his federal sentence. The BOP's policies regarding sentence computation are set forth in Program Statement 5880.28, Sentence Computation Manual ("PS 5880.28"). Also relevant to this case is Program Statement 5160.05, Designation of State Institution for Service of Federal Sentence ("PS 5160.05"). BOP Program Statements are internal agency guidelines. The BOP policies at issue in this case are not published in any federal regulation, and thus are not subject to public notice and comment before adoption. Although they are not entitled to the deference described in Chevron U.S.A. v. National Resources Defense Council, 467 U.S. 837 (1984), they are entitled to "some deference" from this Court so long as they set forth "a permissible construction of" the statutes at issue. Blood v. Bledsoe, 648 F.3d 203, 207-08 (3d Cir. 2011) (per curiam), cert. denied, 132 S.Ct. 1068 (2012) (citing Reno v. Koray, 515 U.S. 50, 61 (1995)).

    **1.**    **The determination of whether a federal sentence is concurrent with, or consecutive to, a state sentence**

18 U.S.C. § 3584(a) provides, in relevant part:

[I]f a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively.… **Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.**

(Emphasis added).

In applying § 3584(a), the BOP presumes that federal and state sentences are to be served consecutively unless the federal sentencing court orders that the sentences are to be served concurrently. See PS 5880.28, Chapt. 1, Pages 31-33; PS 5160.05, Pages 2-7. In this case, the federal district court that imposed Petitioner's federal sentence did not order that his sentence was to be served concurrent with

7

any state sentence. Therefore, the BOP has calculated Petitioner's federal sentence to run consecutive to his state sentence. Petitioner does not challenge that decision.

### 2. Calculation of the date upon which a federal sentence commences

18 U.S.C. § 3585(a) governs the date upon which a federal sentence commences. It provides:

> (a) Commencement of sentence. – A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585(a).

The BOP, and not the federal sentencing court, determines the date upon which a federal sentence commences. See, e.g., Ruggiano v. Reish, 307 F.3d 121, 126 (3d Cir. 2002), superseded on other grounds by U.S.S.G. § 5G1.3(c) cmt. n.3(E) (2003). Because the statute provides that a sentence commences when an inmate is produced or received for service of his federal sentence, the BOP will not commence a sentence earlier than the date it is imposed, even if made concurrent with a sentence already being served. PS 5880.28, Chapt. 1, Page 13 ("In no case can a federal sentence of imprisonment commence earlier than the date on which it is imposed."). See, e.g., Rashid v. Quintana, 372 F.App'x 260, 262 (3d Cir. 2010) (per curiam) ("a federal sentence cannot begin to run earlier than on the date on which it is imposed.") (citing Unites States v. Labeille-Soto, 163 F.3d 93, 98 (2d Cir. 1998), which stated: "We see nothing in [§ 3585(a)] to indicate that the court is permitted to order that the sentence be deemed to have commenced on an earlier date. Indeed, the determination of the precise date on which a sentence begins appears to have been intended to be a ministerial decision that depends on the timing of the defendant's arrival at the appropriate place with respect to the sentence that is to be served, and we have held that after a defendant is sentenced, it falls to the BOP, not the district judge, to determine when a sentence is deemed to commence[.]" (internal quotations and brackets omitted)).

8

When an inmate is only facing service of a federal sentence, the application of § 3585(a) is straightforward. The BOP will designate the inmate to a federal detention facility and it will calculate the federal sentence to have commenced on the date it was imposed. PS 5880.28, Chapt. 1, Page 12. Oftentimes, however, as in the instant case, an inmate is subject to multiple sentences, *e.g.*, at the time his federal sentence is imposed he is or will soon be subject to a state sentence. In that case, the federal and state governments must resolve where and/or in what order the inmate will serve his multiple sentences. As discussed above, at common law the "primary custody" doctrine developed to assist the sovereigns in making these determinations and to provide an orderly method by which to prosecute and incarcerate an individual that violated the law of more than one sovereign. Once again, the primary custody doctrine provides that the sovereign that first arrests an individual has primary custody over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him. The sovereign with primary custody is entitled to have the individual serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction. See, e.g., Bowman, 672 F.2d at 1153-54. Primary custody remains vested in the sovereign that first arrests the individual until its sentence expires and it releases the inmate, or until it relinquishes its priority through some other act, such as granting bail, dismissing the charges, **or releasing the individual on parole**. George, 463 F.App'x at 138 n.4.

The BOP has incorporated the common law primary custody doctrine into its policies, which provide:

1. If the federal government has primary custody of an inmate on the date his federal sentence is imposed, it is entitled to have that inmate serve his federal sentence upon imposition. In such a case, the BOP will designate the inmate to a federal detention facility for service of the federal sentence and will calculate that sentence to have commenced on the date the federal sentencing court imposed it, even if at that same time the inmate is serving a concurrent state sentence. PS 5880.28, Chapt. 1, Pages 12-13.

9

2. If the inmate is in the primary custody of the state and the federal sentencing court orders that he serve his federal sentence *concurrently* with any state sentence, the BOP will return physical custody of the inmate to the state, designate the state facility as the initial place of service of the federal sentence pursuant to its authority under 18 U.S.C. § 3621(b), and calculate his federal sentence to have commenced on the date the federal court imposed it. PS 5880.28, Chapt. 1, Page 13, 32A-33; PS 5160.05, Pages 2-12.

3. If an inmate is in the primary custody of the state when his federal sentence is imposed and if his federal sentence is *consecutive to* any state sentence, the inmate will be returned to the state after federal sentencing. The BOP will commence the inmate's federal sentence under § 3585(a) when the state relinquishes its priority and releases him to federal custody. PS 5880.28, Chapt. 1, Pages 12-13, 31-33; see also PS 5160.05, Pages 2-12.

The third scenario is what has occurred in Petitioner's case. He was in the primary custody of the Commonwealth on the date his federal sentence was imposed. Because his federal sentence is consecutive to his state sentence, the BOP has calculated his federal sentence to have commenced under § 3585(a) on March 7, 2012, which is the date the Board released him on parole to the federal detainer.

Petitioner contends that the BOP has erred in calculating his federal sentence to have commenced on March 7, 2012. He contends that he should have been paroled on May 25, 2011, and therefore, he should receive credit for all time served after that date. On May 25, 2011, the Board entered its decision in **Case No. 2741**. In that decision, the Board stated, in relevant part:

> Following an interview with you and a review of your file, and having considered all matters required pursuant to the parole act, the Board of Probation and Parole in the exercise of its discretion has determined at this time that: **you are granted parole/reparole**....
> - - -
> **You are paroled upon completion of stress and anger management program to federal detainer**; approved home to be available.

(Resp's Attach. B1, Notice of Board Decision, ECF No. 21-5 at 2 (emphasis added)).

Petitioner argues that he should have been paroled on the date the Board issued its decision (May 25, 2011) because he had already completed a stress and anger management program. In support of his

10

contention, he has submitted to the Court an undated letter on Cambria County Prison letterhead from Counselor Tammy Sinclair in which it is stated:

> [Petitioner] was committed to Cambria County Prison on April 15, 2009 until July 15, 2011. During this time, [Petitioner] did complete Stress and Anger class with Courtney Shall. He completed the class on April 20, 2011 and received a certificate for his completion.

[ECF No. 18 at 2].

Assuming that this letter is authentic, it does not assist Petitioner in this case. It only demonstrates that he completed a stress and anger class at the Cambria County Prison the month before the Board issued its May 25, 2011, decision. It does not establish the date that he was paroled. In contrast, Respondent has submitted to the Court the declarations of Timothy Homes, Assistant Counsel with the DOC, and Paul Waters, a Parole Manager with the Board. Those declarations, along with the supporting documentation attached to them, prove that the Board did not release Petitioner on parole until March 7, 2012. After it had issue its May 25, 2011, decision, Petitioner was transferred to the State Correctional Institution in Chester, where he participated in "Short Min Therapeutic Community, which encompasses the Stress and Anger Management Program." (Walters Decl. ¶¶ 7, ECF No. 21-4 at 3). He completed that program on March 2, 2012, and five days later he was released on parole to the federal detainer. (Walters Decl. ¶¶ 7, ECF No. 21-4 at 3).

As Respondent points out, if Petitioner thought the Board erred in not immediately releasing him on parole after it issued its May 25, 2011, decision, he needed to pursue that matter with the Board at that time. If he did, he was not successful. In any event, the record in this case establishes that after the Board issued its May 25, 2011, decision, Petitioner continued to serve his term of imprisonment on **Case No. 2741** until he was released on parole to the federal detainer on March 7, 2012. It is on that date, and no other, that primary custody over Petitioner was transferred from state authorities to federal

authorities. (Walters Decl. ¶ 9, ECF No. 21-4 at 3. See also Resp's Attach. B2, Order to Release On Parole/ReParole, ECF No. 21-6 at 2; Holmes Decl., ¶ 4, ECF No. 21-1 at 3; Resp's Attach. A2, DOC Inmates Query-Moves, ECF No. 21-3 at 2).

Because the Board relinquished its primary custody over Petitioner on March 7, 2012, the BOP has calculated his federal sentence to have commenced on that date pursuant to § 3585(a) and applicable policies. There is no basis for this Court to disturb the BOP's decision in this regard.

### 3. Calculation of pre-commencement credit

18 U.S.C. § 3585(b) governs pre-commencement credit (commonly known as prior custody credit). It controls whether an inmate is entitled to any credit against his federal sentence for time he served in official detention prior to the date his federal sentence commenced. It provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> **That has not been credited against another sentence.**

(Emphasis added).

The intent of the last clause of § 3585(b) is to prohibit double sentencing credit situations. Wilson, 503 U.S. at 337 (explaining that with the enactment of § 3585(b), "Congress made it clear that a defendant could not receive a double credit for his detention time."). Thus, the BOP may not grant credit under § 3585(b) for any time that has been credited against another sentence. See, e.g., Rios v. Wiley, 201 F.3d 257, 272 (3d Cir. 2001), *abrogated in part on other grounds by statute*; United States v. Vega, 493 F.3d 310, 314 (3d Cir. 2007).

12

The BOP has determined that Petitioner is entitled to 139 days of federal pre-commencement credit under § 3585(b) (from April 15, 2009 through August 31, 2009) because the DOC credited against his state sentence/s all of the other time that he spent in official detention during the relevant time period. (Resp's Ex. 2a, Inmate Data, ECF No. 9-9 at 4; Pet's Ex. C, Responses to Administrative Appeals, ECF No. 5-1 at 5-7). There is no basis for this Court to disturb the BOP's determination. It is statutorily precluded from granting Petitioner any additional credit under § 3585(b) for time he spent in official detention prior to the date his federal sentence commenced on March 7, 2012. Rios, 201 F.3d at 271-76; Vega, 493 F.3d at 314 (the BOP did not err when it disallowed credit under § 3585(b)).

Petitioner also contends that he is entitled to what is referred to as "Willis credit." The BOP has created a limited exception to § 3585(b)'s rule against double credit in accordance with the decision in Willis v. United States, 438 F.2d 923 (5th Cir. 1971). Pursuant to Willis, the BOP will award an amount of non-federal prior custody credit if the following conditions are present: (1) *the non-federal and the federal sentences are concurrent*; and (2) the non-federal raw effective full term ("EFT") is either the same or earlier than the federal raw EFT. PS 5880.28, Chapt. 1, Pages 22. Willis does not apply to Petitioner's circumstance because his federal sentence is not concurrent with his state sentence.

Finally, Petitioner contends that he is entitled to additional pre-commencement credit for any time he served after the USMS lodged the federal detainer with the state authorities on September 18, 2009, even though that time was credited against his state sentence. His reasoning is that, if he had posted bond with the state court following his April 15, 2009, arrest at **Case No. 1139**, state authorities would not have been able to free him because of the existence of the federal detainer. There is no merit whatsoever to Petitioner's argument. First, none of the cases that he cites support the proposition that he is entitled to additional credit under § 3585(b). As discussed above, § 3585(b) is the federal statute that governs the entitlement to pre-commencement credit, and the BOP is statutorily

13

precluded from granting Petitioner any additional credit under § 3585(b) for time he spent in official detention prior to the date his federal sentence commenced on March 7, 2012. Rios, 201 F.3d at 271-76; Vega, 493 F.3d at 314. Second, Petitioner did not post bail after the Johnstown Police arrested him on April 15, 2009. Thus, he was in state custody as a result of the charges pending in that case because he could not post bail. Those charges were dismissed following his federal sentencing in April of 2011, but by that time he was serving the term of imprisonment imposed in the state case at **Case No. 2741**. (Ray Decl. ¶ 10, ECF No. 9-1 at 3). Therefore, there was no point at which it could be said that state authorities detained him solely because of the existence of the federal detainer.

### III.　CONCLUSION

For the foregoing reasons, it is respectfully recommended that the petition for a writ of habeas corpus be denied.[2]

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties must seek review by the district court by filing objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Dated:　June 26,, 2014
　　　　　　　　　　　　　　　　　　/s/ Susan Paradise Baxter
　　　　　　　　　　　　　　　　　　SUSAN PARADISE BAXTER
　　　　　　　　　　　　　　　　　　United States Magistrate Judge

---

[2]　Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B).

cc: The Honorable Cathy Bissoon
United States District Judge